# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

**NICOLE HOIER EVERSON,**

    **Plaintiff,**

    **v.**                                       **Case No. 21-CV-716-SCD**

**KILOLO KIJAKAZI,**
*Acting Commissioner of the Social Security Administration,*

    **Defendant.**

---

## DECISION AND ORDER

---

Nicole Hoier Everson applied for social security disability benefits based on several physical and mental impairments. After a hearing, an administrative law judge (ALJ) employed by the Social Security Administration (SSA) denied Hoier Everson's claims, finding that although she had severe impairments, she was still capable of performing sedentary work with certain limitations. Hoier Everson seeks judicial review of that decision, arguing that the ALJ erred in evaluating her mental residual functional capacity (RFC)—that is, her maximum mental capabilities despite her limitations, *see* 20 C.F.R. §§ 404.1545(a), 416.945(a)—and in finding that there were enough jobs she could perform with that RFC. Hoier Everson also contends that she is entitled to a new hearing because the structure for removing the Commissioner of the SSA violates the United States Constitution. Kilolo Kijakazi, Acting Commissioner of the SSA, maintains that the ALJ did not commit reversible error in denying Hoier Everson's claim, substantial evidence supports the ALJ's decision, and Hoier Everson is not entitled to relief on her constitutional claim. I agree with Kijakazi on each point; thus, I will affirm the denial of disability benefits.

## BACKGROUND

Hoier Everson was born in 1985. R. 40.[1] She struggled with mental health issues as a teenager, causing her to miss a lot of school, but she still managed to graduate (albeit a semester late). *See* R. 1158, 1321, 1513–14, 1567, 1604–05. After high school, Hoier Everson worked for years as a customer service representative and selling advertisement space for a newspaper. *See* R. 42–45, 295. She stopped working in June 2017, a few weeks before giving birth to her third child, and never returned postpartum. *See* R. 56–57, 294, 536.

In November 2018, Hoier Everson applied for disability insurance benefits and supplemental security income, alleging disability due to major depressive disorder, anxiety disorder, attention-deficit/hyperactivity disorder, and several physical impairments. *See* R. 261–79, 294. The SSA denied her applications at the state-agency level of review. *See* R. 66–149. Catherine Byrd, PsyD, and Therese Harris, PhD, reviewed the psychological records at the initial and reconsideration levels, respectively. *See* R. 68–107, 110–49. Both reviewing psychologists determined that Hoier Everson's mental impairments were not presumptively disabling because she did not have an extreme limitation of one, or a marked limitation of two, of the four areas of mental functioning a person uses in a work setting (known in social security lexicon as the "paragraph B" criteria): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *See id.* However, Dr. Harris did believe that Hoier Everson wouldn't be able to interact appropriately with the public. *See* R. 126–27, 146–47.

In September 2020, an ALJ employed by the SSA held an evidentiary hearing on Hoier Everson's disability applications. *See* R. 35–65. Hoier Everson testified at the hearing. *See*

---

[1] The transcript is filed on the docket at ECF No. 14-2 to ECF No. 14-22.

R. 40–58. So did a vocational expert. *See* R. 58–65. The vocational expert testified that a hypothetical person with Hoier Everson's age (thirty-two years old at the time of her alleged onset of disability), education (some college), and work experience (as an insurance customer service rep and a telephone solicitor) could not perform her past jobs if she were limited to sedentary work with other postural, environmental, manipulative, and mental-health restrictions. R. 59–61. According to the vocational expert, that person could perform other jobs in the economy; he gave three examples: "document preparer," "addresser," and "cutter and paster, press clippings." *Id.* The vocational expert testified that there were approximately 12,000 document preparer jobs, 12,000 addresser jobs, and 8,000 cutter and paster jobs available "nationally." *Id.* The vocational expert further testified that the hypothetical person would not be able to work if she were off task more than fifteen percent of the workday or missed more than one day of work per month. R. 61–62. Hoier Everson's lawyer did not ask the vocational expert any questions about the three sample jobs he provided. *See* R. 62–63.

In October 2020, the ALJ issued a written decision finding that Hoier Everson was not disabled. *See* R. 10–34. The ALJ considered the disability applications under 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), which set forth a five-step process for evaluating disability benefits claims. The only parts of that evaluation at issue here are the ALJ's assessment of Hoier Everson's mental RFC and the ALJ's finding at step five that Hoier Everson remained capable of adjusting to other work.

The ALJ determined that Hoier Everson was able to understand, remember, and carry out simple instructions; could maintain concentration, persistence, and pace for two-hour intervals over an eight-hour day with routine breaks; could work in a low-stress job (which the ALJ defined as a job that requires only occasional work-related decisions and changes in

the work setting); and could have occasional interaction with supervisors, coworkers, and the public. R. 19. In assessing that RFC, the ALJ considered Hoier Everson's subjective allegations, the medical evidence, and the medical opinion evidence and prior administrative medical findings. *See* R. 19–25. The ALJ credited many of Hoier Everson's alleged symptoms but determined that her statements about the intensity, persistence, and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record." R. 20.

As for the medical evidence, the ALJ noted that Hoier Everson had been treated for depression, anxiety, and ADHD. *See* R. 21–23. Hoier Everson saw Emily Rademacher, DO, for most of her mental-health treatment; she also participated in individual therapy and two rounds of intensive outpatient treatment. The ALJ recognized that at times Hoier Everson reported experiencing mood fluctuation, anxiety, inattention, difficulty concentrating, feeling overwhelmed due to situational stressors, and sadness. *See* R. 22 (citing Exhibits 3F/70–73, 80–83; 17F/5–7; 22F/8–15; 24F/13–16), R. 23 (citing Exhibit 32F/75–79). However, according to the ALJ, Hoier Everson's mental-status examinations largely were unremarkable, as she frequently presented with a good mood, congruent affect, logical and goal-directed thought processes, normal thought content, adequate memory and concentration, and fair judgment. *See* R. 22 (citing Exhibits 3F/26–28; 22F/8–15; 24F/13–16), R. 23 (citing Exhibit 32F/75–79). The ALJ also determined that Hoier Everson's mental functioning responded well to treatment. For example, following several exacerbations, Hoier Everson reported that her mood and anxiety symptoms stabilized with adjustments to her medication regimen. *See* R. 22 (citing Exhibit 3F/70–73), R. 22–23 (citing Exhibit 32F/14–16), R. 23 (citing Exhibit

32F/75–79). Likewise, Hoier Everson reported that the outpatient treatment was very helpful for anxiety and mood. R. 22 (citing Exhibit 24F/29–31).

The ALJ next addressed the medical opinions and prior administrative medical findings. The ALJ noted that the record contained two medical opinions from Dr. Rademacher, Hoier Everson's psychiatrist.

In May 2019, Dr. Rademacher filled out a Mental Residual Functional Capacity Assessment form. *See* R. 1308–10, 1519–21. In the summary conclusions section of the form, Dr. Rademacher checked boxes indicating that Hoier Everson would have "moderate" limitations understanding, remembering, and carrying out detailed instructions; making simple work-related decisions; interacting appropriately with the general public; asking simple questions or requesting simple assistance; maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness; responding appropriately to changes in the work setting; traveling to unfamiliar places or using public transportation; and setting realistic goals or making plans independently of others. R. 1308–09, 1519–20. Dr. Rademacher further indicated that Hoier Everson would have "marked" limitations remembering locations and work-like procedures; maintaining attention and concentration for extended periods; performing activities within a schedule, maintaining regular attendance, and being punctual; working in coordination with or in proximity to others without being distracted by them; completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; and accepting instructions and responding appropriately to criticism from supervisors.

Dr. Rademacher then explained Hoier Everson's functional limitations in narrative form. *See* R. 1310, 1521. She noted that Hoier Everson suffered from major depressive disorder, ADHD, and social anxiety disorder. R. 1310, 1521. As for specific limitations, Dr. Rademacher indicated that Hoier Everson's impairments impaired her ability to concentrate on tasks, remember instructions, and work without being distracted by others. Dr. Rademacher further indicated that Hoier Everson had difficulty retaining and recalling information, following schedules, making decisions, and planning ahead. According to Dr. Rademacher, at times Hoier Everson would be unable to complete a normal workday. Dr. Rademacher also stated that being around or having to interact with other people was distressful for Hoier Everson. Finally, Dr. Rademacher stated that Hoier Everson would have increased difficulty adapting to new environments and tasks.

Eight months later, in January 2020, Dr. Rademacher completed a Mental Impairment Questionnaire in support of Hoier Everson's disability applications. *See* R. 1664–70. Dr. Rademacher noted on the questionnaire that she saw Hoier Everson approximately every three months for thirty-minute visits. R. 1665. She listed six diagnoses—episodic mood disorder, social anxiety disorder, ADHD, excoriation disorder (i.e., chronic skin-picking), neuropathy/fibromyalgia, and insomnia—and described Hoier Everson's treatment and response to treatment, prescribed medications and side effects, clinical findings, prognosis, and signs and symptoms. *See* R. 1665–67. As for Hoier Everson's mental abilities and aptitudes, Dr. Rademacher checked boxes suggesting that Hoier Everson's functioning deteriorated in several areas of mental functioning, moving from a moderate limitation to "unable to meet competitive standards." *See* R. 1667–68. Those findings also indicated Hoier Everson now had a "serious," rather than a marked, limitation in other areas. As for the (old)

6

paragraph B criteria, Dr. Rademacher opined that Hoier Everson had a "moderate" limitation in restriction of activities of daily living; had a "marked" limitation in maintaining social functioning; had an "extreme" limitation maintaining concentration, persistence, or pace; and had experienced one or two episodes of decompensation in the last year, each lasting at least two weeks. R. 1669. Dr. Rademacher also checked a box indicating that Hoier Everson had a residual disease process that resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would likely cause her to decompensate. According to Dr. Rademacher, Hoier Everson's impairments or treatment would cause her to miss, on average, more than four days of work per month. R. 1670.

The ALJ determined that Dr. Rademacher's opinions were not persuasive. *See* R. 24. The ALJ noted that the two opinions were not consistent with each other and that Dr. Rademacher did not adequately explain the differences, despite filling out the forms within the span of just eight months. Moreover, the ALJ found that the record did not support and was not consistent with Dr. Rademacher's opinions. For example, the ALJ noted that although the treatment notes included complaints of problems remembering, concentrating, and paying attention, Dr. Rademacher's mental-status exams "consistently documented adequate memory and concentration." R. 24. The ALJ also found that Hoier Everson's admitted babysitting in April 2020 contradicted Dr. Rademacher's statement that even a minimal increase in mental demands would likely cause a mental breakdown. R. 24 (citing Exhibit 30F/4–7).

The ALJ also considered the prior administrative medical findings of Dr. Bard and Dr. Harris, the reviewing state-agency psychologists. *See* R. 24–25. The ALJ determined that the reviewing psychologists' findings were generally persuasive because they were consistent with

7

each other, and they were well-supported by the treatment notes and Hoier Everson's subjective complaints of memory and attention deficits. However, the ALJ did not find persuasive Dr. Harris' finding that Hoier Everson had a marked limitation dealing with the public. The ALJ noted that Hoier Everson reported social anxiety, including fear of leaving her house and interacting with others. But, according to the ALJ, "the record does not document a total inability to interact with others or problems with anger, belligerence, or violence." R. 25. The ALJ therefore believed that a moderate limitation—no more than occasional interaction with the general public—was more consistent with the record.

The ALJ summarized her RFC assessment as follows: "Based on the foregoing, the undersigned finds the claimant has the above residual functional capacity assessment, which is supported by the physical and mental treatment notes, the overall course of treatment, and the opinions of the State agency psychological consultants." R. 25.

The ALJ then continued the sequential evaluation process. After finding that Hoier Everson was unable to perform her past relevant work, the ALJ determined at step five that, given Hoier Everson's age, education, work experience, and RFC, she could successfully adjust to other work. *See* R. 25–26. Relying on the vocational expert's testimony, the ALJ mentioned three jobs Hoier Everson could perform: document preparer, addresser, and cutter and paster of press clippings. R. 26. Again consistent with the vocational expert's testimony, the ALJ found that there were approximately 12,000 document preparer jobs, 12,000 addresser jobs, and 8,000 cutter and paster jobs available "in the national economy." *Id.* The ALJ found that those numbers constituted a "significant number" of jobs in the national economy Hoier Everson could perform. *Id.* Based on those findings, the ALJ determined that Hoier Everson was not disabled from her alleged onset date through the date of the decision.

8

The SSA's Appeals Council denied Hoier Everson's request for review, R. 1–6, making the ALJ's decision a final decision of the Commissioner of the Social Security Administration, *see Loveless v. Colvin*, 810 F.3d 502, 506 (7th Cir. 2016).

On June 11, 2021, Hoier Everson filed this action seeking judicial review of the Commissioner's decision denying her claim for disability benefits under the Social Security Act, 42 U.S.C. § 405(g). *See* ECF No. 1. United States District Judge Pamela Pepper reassigned the matter to me after all parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 4, 7, 8. Hoier Everson filed a brief in support of her disability claim, ECF No. 22; Kijakazi filed a brief in support of the ALJ's decision, ECF No. 27; and Hoier Everson filed a reply brief, ECF No. 31.

## APPLICABLE LEGAL STANDARDS

"Judicial review of Administration decisions under the Social Security Act is governed by 42 U.S.C. § 405(g)." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010)). Pursuant to sentence four of § 405(g), federal courts have the power to affirm, reverse, or modify the Commissioner's decision, with or without remanding the matter for a rehearing. A reviewing court will reverse the Commissioner's decision "only if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020) (citing *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)).

"Substantial evidence is not a demanding requirement. It means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Martin*, 950 F.3d at 373 (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). In reviewing the record, this court "may not re-weigh the evidence or substitute its judgment for that of the

9

ALJ." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Rather, I must determine whether the ALJ built an "accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citing *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)).

## DISCUSSION

Hoier Everson raises three potential grounds for relief. First, she argues that substantial evidence does not support the ALJ's mental RFC assessment. Second, she argues that the ALJ erred in finding at step five of the sequential evaluation process that a significant number of jobs existed that someone with Hoier Everson's RFC could perform. Third, she argues that her disability claim should be remanded for a new hearing because the denial of benefits resulted from a constitutionally defective adjudicative process.

## I.     Substantial Evidence Supports the ALJ's Mental RFC Assessment

Hoier Everson contends that the ALJ did not support her mental RFC assessment with evidence or explanation. She seems to think that the ALJ's entire explanation consisted of the following sentence, which appears at the end of the RFC section of the ALJ's decision: "Based on the foregoing, the undersigned finds the claimant has the above residual functional capacity assessment, which is supported by the physical and mental treatment notes, the overall course of treatment, and the opinions of the State agency psychological consultants." R. 25. However, the phrase "based on the foregoing" alludes to prior analysis, which is exactly what happened here. The ALJ dedicated more than a third of her decision to explaining Hoier Everson's RFC. *See* R. 19–25. With respect to mental impairments, the ALJ based her RFC

10

assessment on Hoier Everson's subjective allegations, the objective evidence—namely visits with Dr. Rademacher, two intensive outpatient treatment programs, and therapy—Hoier Everson's improvement with treatment, opinion evidence, and Hoier Everson's admitted activities. *See* R. 21–25. The ALJ therefore clearly provided evidence and explanation to support her mental RFC assessment.

Hoier Everson also takes issue with the ALJ's handling of certain evidence she cited in support of her mental RFC assessment. Specifically, she maintains the ALJ erred in evaluating Dr. Rademacher's opinions; the ALJ also didn't sufficiently explain why she deviated from the prior administrative medical findings, and ignored other evidence that purportedly supported a more restrictive mental RFC.

### A.    Dr. Rademacher

Hoier Everson first argues that the ALJ ignored both of Dr. Rademacher's opinions. She's mistaken. The ALJ discussed in detail the Mental Residual Functional Capacity Assessment form Dr. Rademacher filled out in May 2019 and the Mental Impairment Questionnaire Dr. Rademacher completed in January 2020. *See* R. 24 (citing Exhibits 20F; 28F; 34F). The ALJ also explained why she found both opinions unpersuasive.

Hoier Everson also argues that the ALJ failed to consider her extensive treatment relationship with Dr. Rademacher. I disagree. The ALJ noted that Dr. Rademacher was Hoier Everson's psychiatrist. *See* R. 22. The ALJ also discussed Dr. Rademacher's treatment notes in depth, *see* R. 22–23, a fact Hoier Everson concedes in her brief, *see* ECF No. 22 at 15 ("The fact that her treatment is prevalent in the objective medical evidence resulted in a decision that discusses her findings in over four paragraphs.").

11

Moreover, under the new social security regulations—applicable here because Hoier Everson applied for benefits on or after March 27, 2017—an ALJ may not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Rather, the ALJ must consider the persuasiveness of all medical opinions in the record using five factors: supportability, consistency, relationship with the claimant, specialization, and other factors. *See* 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The ALJ, however, needs to explain in her decision how she considered only the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(a), (b)(2), 416.920c(a), (b)(2) (referring to supportability and consistency as "the most important factors").

The ALJ here addressed both factors. *See* R. 24. She noted that Dr. Rademacher's two opinions were not consistent with each other and found that Dr. Rademacher failed to adequately explain what had changed during the intervening eight months. The ALJ further found that Dr. Rademacher's own treatment notes—which consistently documented adequate memory and concentration—did not support the psychiatrist's opinion that Hoier Everson had significant deficits in memory, concentration, and attention. Finally, according to the ALJ, Hoier Everson's reported babysitting in April 2020 contradicted Dr. Rademacher's opinion that Hoier Everson likely would suffer a mental breakdown with even a minimal increase in her mental demands.

Hoier Everson faults the ALJ for not citing to any record showing adequate memory and concentration. Although the ALJ didn't cite those records when evaluating Dr. Rademacher's opinions, she did cite them while summarizing the medical evidence. For example, the ALJ noted that, in January 2018, Hoier Everson reported that her ADHD was well-controlled, and she exhibited adequate memory and concentration during the mental-

status exam. *See* R. 22 (citing Exhibit 3F/70–73). The ALJ noted similar findings at Hoier Everson's visits in October 2018, May 2019, September 2019, and April 2020. *See* R. 22 (citing Exhibits 3F/26–28; 17F/5–7; 24F/13–16), R. 23 (citing Exhibit 32F/75–79). Those records bolster the ALJ's conclusion that Dr. Rademacher's own findings did not support her extreme opinions; the ALJ did not need endlessly to repeat her citations throughout the decision. *See Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021) ("An ALJ need not rehash every detail each time he states conclusions on various subjects.").

Hoier Everson also faults the ALJ for not discussing the other two areas of mental functioning addressed in Dr. Rademacher's opinions: social interaction and adaptation. The ALJ did, however, discuss Dr. Rademacher's opined adaptation limitation, finding it inconsistent with Hoier Everson's reported activities, namely babysitting another child in addition to taking care of her own. *See* R. 24 (citing Exhibit 30F/4–7 ("Currently works at home caring for someone's child.")). The ALJ did not explicitly discuss the persuasiveness of Dr. Rademacher's opined social-interaction limitation. That mistake, however, does not require remand. *See Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) ("Although an ALJ need not mention every snippet of evidence in the record, the ALJ must connect the evidence to the conclusion; in so doing, he may not ignore entire lines of contrary evidence."). Dr. Rademacher did not express her opined social-interaction limitation in functional terms, indicating only that being around and interacting with others was very distressful for Hoier Everson. Hoier Everson does not explain how the ALJ's mental RFC assessment—which permitted only occasional interaction with others—failed to accommodate that opinion.

Finally, Hoier Everson argues that the ALJ missed two disorders diagnosed by Dr. Rademacher. On the May 2019 form, Dr. Rademacher listed Hoier Everson's diagnoses as

13

major depressive disorder, ADHD, and social anxiety disorder. *See* R. 1310, 1521. Later that month, however, Hoier Everson entered the first of two intensive outpatient programs. *See* R. 1320–27. During a group therapy session, Hoier Everson admitted to picking her skin when she felt anxious and explained that the skin picking had worsened over the last few months. R. 1319. Hoier Everson subsequently discussed the skin picking with Dr. Rademacher, who diagnosed excoriation disorder in July 2019. *See* R. 1446–49. During follow-up sessions, Hoier Everson also described a fluctuating mood, leading Dr. Rademacher to assess her with episodic mood disorder in November 2019. *See* R. 1423–26. Dr. Rademacher noted both "new" diagnoses on his January 2020 questionnaire. *See* R. 1665. According to Hoier Everson those new diagnoses explain the differences in Dr. Rademacher's two opinion statements, but the ALJ did not mention either diagnosis in her decision.

The ALJ did not commit reversible error by failing to explicitly mention Hoier Everson's episodic mood disorder and excoriation disorder diagnoses. Hoier Everson did not allege disability based on those impairments, *see* R. 294, she did not mention either one at the administration hearing, *see* R. 40–58, and social security regulations forbid an ALJ from using a diagnosis alone to establish the existence of a medically determinable impairment, *see* 20 C.F.R. §§ 404.1521, 416.921. Perhaps more importantly, Hoier Everson has not identified any supported work-related restrictions those impairments caused that the ALJ failed to include in her mental RFC assessment. *See Morrison v. Saul*, 806 F. App'x 469, 474 (7th Cir. 2020) (rejecting the plaintiff's argument that an ALJ erred in not considering his chronic pain because the plaintiff did not "offer any additional restrictions that he believes should have been included in the RFC"). The ALJ explained how her RFC assessment accommodated Hoier Everson's anxiety and fluctuating mood. And although Dr. Rademacher mentioned the

14

new diagnoses on the January 2020 questionnaire, she did not tie them to any specific functional limitations or explain that the diagnoses resulted in a more limiting opinion than the one she provided in May 2019. Nor is the connection obvious.

### B.    Prior administrative medical findings

Hoier Everson also argues that the ALJ "provided an illogical and unsupported departure from the state agency psychologist." ECF No. 22 at 19. Dr. Harris, who reviewed the psychological records upon Hoier Everson's request for reconsideration, believed that Hoier Everson wouldn't be able to interact appropriately with the public. *See* R. 126–27, 146–47. The ALJ found that finding unpersuasive, explaining that while Hoier Everson "reported social anxiety, including fear of leaving her house and interacting with others, the record [did] not document a total inability to interact with others or problems with anger, belligerence, or violence." R. 25. Thus, according to the ALJ, a moderate limitation—no more than occasional interaction with the public—was more consistent with the record.

Hoier Everson contends the ALJ's analysis suffers from two errors. First, she says that requiring a total inability to interact with others or problems with anger, belligerence, or violence is more consistent with an "extreme" limitation in interacting with others; however, Dr. Harris found only a "marked" limitation. I fail to see the importance of this distinction. It was Dr. Harris—not the ALJ—who believed that Hoier Everson could have no interaction with the public whatsoever. The ALJ reasonably concluded that the record did not document issues (e.g., severe panic attacks when out in public or confrontations with others) to support that level of limitation. Second, Hoier Everson faults the ALJ for not including any record citations in his analysis. The ALJ, however, explained in detail the basis for her social-interaction finding earlier in her decision, including specific citations to the record. *See* R. 17

15

(citing Exhibits 11E; 17F/5–7; 24F/5–8, 29–31; 32F/22–25). She didn't need to repeat those citations in the RFC section of her decision. It's also doubtful whether any of the three sample jobs provided by the vocational expert—document preparer, addresser, and cutter and paster—involve interactions with the general public.

### C. Other evidence the ALJ allegedly ignored

Hoier Everson accuses the ALJ of ignoring other evidence in the record, but she fails to explain how consideration of that evidence would have led to a more restrictive mental RFC assessment. For example, she faults the ALJ for not discussing a letter from her therapist, Amy Helein. Contrary to Hoier Everson's suggestion, the letter does not constitute a "medical opinion" under social security regulations. *See* 20 C.F.R. §§ 404.1513, 416.913 ("A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in certain listed abilities.") The letter simply recounts Hoier Everson's diagnosis, some of her subjective complaints, and that she had attended five sessions and been referred to outpatient care. *See* R. 1416. Because the letter did not outline any functional limitations or restrictions, the ALJ didn't need to address it. *See Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015) ("As we have said, an ALJ need not provide a complete written evaluation of every piece of testimony and evidence.") (internal quotation marks and citation omitted). Moreover, the subjective complaints identified in the letter—an inability to focus, difficulty concentrating, memory issues, difficulty completing daily tasks, self-isolation, and anxiety— mirrored evidence the ALJ considered elsewhere in her decision. Hoier Everson does not explain how the letter supports additional limitations or restrictions.

16

Hoier Everson also criticizes the ALJ for not mentioning her insomnia diagnosis. But again, she fails to point to any evidence or medical opinion showing additional limitations or restrictions resulting from that impairment.

Finally, Hoier Everson asserts that the ALJ failed to adopt a limitation for off-task behavior despite finding ADHD to be a severe impairment. *See* ECF No. 22 at 13. This one-sentence argument is perfunctory and undeveloped, so I don't need to address it. *See Schoenfeld v. Apfel*, 237 F.3d 788, 793 (7th Cir. 2001) ("We have held time and again that perfunctory and undeveloped arguments (even constitutional ones) are waived.") (quoting *United States v. Andreas*, 150 F.3d 766, 769 (7th Cir. 1998)).

*     *     *

In sum, the ALJ supported her mental RFC assessment with substantial evidence and a logical explanation. Hoier Everson has failed to point out any significant evidence the ALJ failed to address or identify additional limitations compelled by the record.

## II.  Substantial Evidence Supports the ALJ's Step-Five Finding

An individual is disabled under the Social Security Act "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Lee v. Sullivan*, 988 F.2d 789, 792 (7th Cir. 1993) (quoting 42 U.S.C. § 423(d)(2)(A)). "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." § 423(d)(2)(A); *see also* 20 C.F.R. §§ 404.1566(a), 416.966(a). "Once it is determined the claimant cannot perform . . . her prior work, the burden shifts to the [Commissioner] to show the claimant can engage in

17

some other type of substantial gainful employment." *Lee*, 988 F.2d at 792 (citing *Bauzo v. Bowen*, 803 F.2d 917, 923 (7th Cir. 1986)). "The Commissioner typically uses a vocational expert ('VE') to assess whether there are a significant number of jobs in the national economy that the claimant can do." *Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009) (citing *Lee*, 988 F.2d at 793).

That's what happened here. A vocational expert testified at the administrative hearing that a person with Hoier Everson's age, education, work experience, and limitations could work as document preparer, an addresser, and a cutter and paster of press clippings. R. 59–61. According to the expert, there were approximately 32,000 of those jobs "nationally." R. 60–61.[2] The ALJ relied on that testimony at step five, finding that Hoier Everson was capable of successfully adjusting "to other work that exists in significant numbers in the national economy." R. 26.

Hoier Everson argues that the ALJ committed two errors when relying on the vocational expert's testimony. First, she contends the ALJ failed to develop the expert's testimony to ensure that the jobs he mentioned were not obsolete. Hoier Everson points out that the expert obtained those jobs titles from the Dictionary of Occupational Titles (DOT), a source the Department of Labor last updated in 1991. Although the Seventh Circuit has often criticized the Social Security Administration's reliance on the outdated DOT, the court "has not reversed based on DOT obsolescence alone," *Wilson v. Kijakazi*, No. 20-C-732, 2021 WL 3409423, 2021 U.S. Dist. LEXIS 145684, at *57 (E.D. Wis. Aug. 4, 2021) (citing *Ragland v. Berryhill*, No. 17-C-0730, 2018 WL 1757656, 2018 U.S. Dist. LEXIS 61864, at *33–35 (E.D.

---

[2] Specifically, the vocational expert testified there were approximately 12,000 document preparer jobs, 12,000 addressor jobs, and 8,000 cutter and paster jobs in the nation. R. 34.

18

Wis. Apr. 12, 2018) (collecting cases)). Moreover, aside from reciting the descriptions contained in the DOT, Hoier Everson has not cited any authority to show that the jobs identified by the vocational expert are so outdated that no reasonable ALJ could rely on them.[3]

Second, Hoier Everson maintains the ALJ erred by not providing any rationale supporting her finding that 32,000 jobs in the national economy constitute a "significant" number of jobs. I addressed a substantially similar argument in *Engel v. Kijakazi*, No. 20-CV-1206-SCD, 2021 WL 4843871, 2021 U.S. Dist. LEXIS 199810 (E.D. Wis. Oct. 18, 2021). In *Engel*, I noted that most of the Seventh Circuit cases on this issue "have focused on regional (i.e., state or local), rather than national, job numbers." *Engel*, 2021 U.S. Dist. LEXIS 199810, at *32 (collecting cases). I discussed the relevant caselaw at length and ultimately concluded that "23,000 jobs constitutes a significant number of jobs in the national economy." *Id.* at *32–38. In reaching that conclusion, I relied heavily on *Liskowitz*, a case wherein the Seventh Circuit held, "As few as 174 jobs has been held to be significant, and it appears to be well-established that 1,000 jobs is a significant number." *Liskowitz*, 559 F.3d at 743 (citations omitted). Despite being represented by the same lawyer who represented the plaintiff in *Engel*, Hoier Everson does not mention that case—even after Kijakazi cited it—let alone make any attempt to distinguish it from hers. Nor has Hoier Everson cited a recently decided case that makes me rethink my position.

Applying my reasoning from *Engel* to this case, I find that 32,000 jobs nationally constitutes a "significant" number of jobs. First, the fact that the Seventh Circuit has cited

_____

[3] Very recently, this court addressed the supposed obsolescence of the document preparer position. Case No 21-C-425, ECF No. 32.

with approval the 1,000-jobs figure and/or *Liskowitz* without regard to whether the case involved national or regional job numbers suggests that 1,000 jobs nationally can be a significant number of jobs. Second, the jobs cited by the vocational expert in this case do not appear to be concentrated in a few locations outside Wisconsin, where Hoier Everson lived at the time of the administrative hearing. Finally, the jobs identified by the vocational expert "are merely representative of the types of jobs someone with [Hoier Everson's] limitations could perform; the vocational expert did not say those were the *only* jobs available to [her]." *Engel*, 2021 U.S. Dist. LEXIS 199810, at *38.

In sum, Hoier Everson has not demonstrated that the ALJ erred in relying on the vocational expert's testimony at step five of the sequential evaluation process. Substantial evidence therefore supports the ALJ's finding that Hoier Everson could adjust to other work that exists in significant numbers in the national economy.

## III. Hoier Everson Is Not Entitled to Relief on Her Constitutional Claim

Hoier Everson's last argument is another one I've addressed—and rejected—before. She maintains that the adjudication of her claim was constitutionally defective because Section 702 of the Social Security Act, 42 U.S.C. § 902, which limits the President's authority to remove the Commissioner without good cause, violates the separation of powers. Because the removal clause is unconstitutional, Hoier Everson's theory goes, former Commissioner Andrew Saul lacked authority to delegate adjudication of this matter to others, including the ALJ and the Appeals Council. Kijakazi concedes that § 902 violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause. According to Kijakazi, to be entitled to relief for that constitutional violation, Hoier Everson must demonstrate that the removal restriction actually caused her harm. Hoier

20

Everson asserts that the admitted constitutional violation alone is enough to get her a new hearing and, if not, she *has* demonstrated sufficient harm: the denial of benefits stemming from an unconstitutional adjudication process.

Hoier Everson concedes that her argument has been rejected by nearly every district court to have considered it; she presents it here to preserve the issue on appeal. *See* ECF No. 31 at 21 n.5 (collecting cases); *see also* ECF No. 27 at 22 n.7 (collecting cases). Indeed, I have rejected the same argument at least three times in the last six months. *See Robinson v. Kijakazi*, No. 21-CV-238-SCD, 2022 WL 443923, 2022 U.S. Dist. LEXIS 25681 (E.D. Wis. Feb. 14, 2022); *Swiecichowski v. Kijakazi*, No. 21-CV-249-SCD, 2022 WL 2069251, 2022 U.S. Dist. LEXIS 104593 (E.D. Wis. May 27, 2022); Decision & Order, *Metoxen v. Kijakazi*, No. 21-CV-341-SCD (E.D. Wis. June 21, 2022), ECF No. 36. Hoier Everson's argument fails for the same reasons the argument failed in those cases—namely, that there is no causal connection between her adverse decision and the SSA's unconstitutional structure. *See, e.g.*, *Robinson*, 2022 U.S. Dist. LEXIS 25681, at *12–19. Accordingly, she is not entitled to relief on her constitutional claim.

**CONCLUSION**

For all the foregoing reasons, I find that (1) Hoier Everson has not demonstrated that the ALJ committed reversible error in evaluating her mental RFC or finding that Hoier Everson was capable of other work that exists in significant numbers in the national economy, (2) substantial evidence supports the ALJ's decision, and (3) Hoier Everson is not entitled to relief on her constitutional claim. Thus, I **AFFIRM** the Commissioner's decision. The clerk of court shall enter judgment accordingly.

**SO ORDERED** this 25th day of August, 2022.

STEPHEN C. DRIES
United States Magistrate Judge

22